WO          IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


PATRICE MARIE KRIER,                    )
                                        )
                      Plaintiff,        )
                                        )
          vs.                           )
                                        )
CAROLYN W. COLVIN, Acting               )
Commissioner of Social Security         )
Administration,                         )
                                        )          No. 2:13-cv-1898-HRH
                      Defendant.        )
_____ )


O R D E R

This is an action for judicial review of the denial of disability benefits under Titles

II and XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f.  Plaintiff has timely

filed her opening brief,[1] to which defendant has responded.[2]  Oral argument was not

requested and is not deemed necessary.

Procedural Background

Plaintiff is Patrice Marie Krier.  Defendant is Carolyn W. Colvin, acting Commis-

sioner of Social Security.

_____

[1]Docket No. 17.

[2]Docket No. 24.

On August 5, 2010, plaintiff filed applications for disability benefits under Titles II and XVI of the Social Security Act.  Plaintiff alleged that she became disabled on April 2, 2010.  Plaintiff claimed that she was disabled due to symptoms from multiple sclerosis. Plaintiff's applications were denied initially and upon reconsideration.  After a hearing on January 19, 2012, an administrative law judge (ALJ) denied plaintiff's claims.  On July 22, 2013, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's February 23, 2012 decision the final decision of the Commissioner.  On September 13, 2013, plaintiff commenced this action in which she asks the court to find that she is entitled to disability benefits.

## General Background

Plaintiff was born on December 1, 1964.  She was 47 years old at the time of the hearing. Plaintiff has a high school education and completed one year of college.  Plaintiff's adult-age daughter lives with her.  Plaintiff's past relevant work includes work as an administrative assistant, an accounting clerk, and a travel clerk.

## The ALJ's Decision

The ALJ first found that plaintiff met "the insured status requirements of the Social Security Act through at least December 31, 2014."[3]

The ALJ then applied the five-step sequential analysis used to determine whether

---

[3]Admin. Rec. at 111.

an individual is disabled.[4]

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since April 2, 2011, the alleged onset date...."[5]

At step two, the ALJ found that plaintiff had "the following severe impairment: multiple sclerosis...."[6]

At step three, the ALJ found that plaintiff did "not have an impairment or

------

[4]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit ... her ability to work? If so, proceed to step three.  If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow ... her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 111.

[6]Admin. Rec. at 111.

combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1...."[7]  The ALJ explained that plaintiff's "medical records do not describe the degree of disorganization of motor function, the degree of visual or mental impairment or the significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, as required under Section 11.09 for Listing level multiple sclerosis."[8]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC."  Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009). The ALJ found that plaintiff had

> the residual functional capacity to perform medium work, as defined in 20 CFR 404.1567(c) and 416.967(c), with lifting of 25 pounds frequently and 50 pounds occasionally, standing or walking for 6 hours each in an 8 hour day, sitting throughout the course of the day, occasional climbing of ramps/stairs, occasional stooping, kneeling, crouching and crawling, no climbing of ladders, ropes or scaffolds, and no work involving heights, hazardous machinery or exposure to environmental irritants.[[9]]

The ALJ gave great weight to Dr. Levison's opinion[10] and did not give great weight

---

[7]Admin. Rec. at 112.

[8]Admin. Rec. at 112.

[9]Admin. Rec. at 112.

[10]On October 8, 2010, Jeffrey Levison, M.D., examined plaintiff.  Dr. Levison opined
(continued...)

-4-

to Dr. Bomprezzi's[11] "suggestion in January 2012 that it might be dangerous for the claimant to walk long distances without a cane or walker."[12]

The ALJ considered plaintiff's symptom statements less than credible because plaintiff continued "to work for several months after her alleged disability onset date"; because plaintiff's treatment records indicate that she quit working because she was laid off, not because of her alleged disabling symptoms; based on her daily activities; and because plaintiff was receiving unemployment benefits.[13]

At step four, the ALJ found, based on the vocational expert's testimony,[14] that plaintiff could perform her "past relevant work as an administrative assistant, an

---

[10](...continued)
that plaintiff could lift/carry 50 pounds occasionally and 25 pounds frequently; stand/walk for 6 hours; had no limitations as to sitting; could occasionally climb ramp/stairs, stoop, kneel, crouch, and crawl; could never climb ladders/ropes/scaffolds; had no limitations as to reaching, handling, fingering, and feeling; and should avoid working around heights, moving machinery, extremes in temperatures, chemicals, and dust/fumes/gases. Admin. Rec. at 239-40.

[11]Roberto Bomprezzi, M.D., was plaintiff's treating physician at Barrow Neurological Institute where plaintiff participated in a pharmaceutical research study. Dr. Bomprezzi treated plaintiff from May 10, 2010 through January 23, 2012. Admin. Rec. at 262-267 & 288-293.

[12]Admin. Rec. at 114.

[13]Admin. Rec. at 114.

[14]Dr. John Komar testified as the vocational expert. Admin. Rec. at 80-83.

accounting clerk, and a travel clerk."[15]

Thus, the ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, from April 2, 2010, through the date of this decision...."[16]

Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...."  The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards."  Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).  "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).  "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'"  Id.  If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision.  Id.  But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of

---

[15]Admin. Rec. at 115.

[16]Admin. Rec. at 115.

-6-

supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

Discussion

Plaintiff first argues that the ALJ erred as to Dr. Levison's opinion.  The ALJ gave

great weight to Dr. Levison's opinion.[17]  Dr. Levison opined that plaintiff could lift/carry

50 pounds occasionally and 25 pounds frequently; stand/walk for 6 hours; had no

limitations as to sitting; could occasionally climb ramp/stairs, stoop, kneel, crouch, and

crawl; could never climb ladders/ropes/scaffolds; had no limitations as to reaching,

handling, fingering, and feeling; and should avoid working around heights, moving

machinery, extremes in temperatures, chemicals, and dust/fumes/gases.[18]

Plaintiff argues that Dr. Levison only evaluated her "exertional" capacities and that

he recognized that plaintiff had nonexertional limitations that needed to be taken into

consideration.   After examining plaintiff, Dr. Levison concluded that plaintiff "has

relapsing, remitting MS which will intermittently fatigue her and will wax and wane

exasperating her fatigue and weakness.  This must be taken into consideration when

determining her functional status.  Today however her exam and functional status appears

---

[17]Admin. Rec. at 114.

[18]Admin. Rec. at 239-40.

to be completely intact."[19]  Plaintiff argues that the ALJ failed to take into consideration Dr. Levison's opinion that plaintiff's nonextertional limitations would affect her capacity to work.  Plaintiff argues that <u>Parish v. Califano</u>, 642 F.2d 188 (6th Cir. 1981) is instructive on this point.  There, the court observed that

> Multiple sclerosis is an incurable, progressive disease subject to such periods of remission and exacerbation....  Because the January until August 1975 period wherein plaintiff attempted to work and attend school was unquestionably a period of remission, we believe the ALJ erred in placing undue reliance on this brief and temporary interruption of plaintiff's progressively disabling condition. Rather, he should have considered that time-span as merely a period of remission in a continuing disability in making his finding.

<u>Id.</u> at 193 (internal citation omitted).  Plaintiff argues that because the ALJ failed to consider the full import of Dr. Levison's opinion, "the ALJ failed to build the requisite 'logical bridge' between the evidence and her conclusion."  <u>Scott v. Astrue</u>, 647 F.3d 734, 740 (7th Cir. 2011).  Plaintiff insists that the ALJ was not entitled to "cherry pick" the portion of Dr. Levison's opinion that supported a finding a nondisability while ignoring the portion that would support a finding of disability.  <u>Id.</u>

To the extent that the ALJ erred by ignoring Dr. Levison's statement about plaintiff's fatigue, this error was harmless.  "An error is harmless if it is 'inconsequential to the ultimate nondisability determination[.]'"  <u>Treichler v. Comm'r of Social Sec. Admin.</u>, ---

---

[19]Admin. Rec. at 238.

F.3d ---, 2014 WL 7332774, at *6 (9th Cir. 2014) (quoting Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012)).  Dr. Komar, the vocational expert, testified that a person "who has intermittent bouts of neurological dysfunctions that wax and wane and would exacerbate her fatigue and weakness on a regular basis" would be able to perform plaintiff's past relevant work.[20]  Even if the ALJ had included Dr. Levison's "fatigue" limitation in plaintiff's RFC, the outcome of this case would not have changed.

Plaintiff next argues that the ALJ erred in finding her symptom statements less than credible.  "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014).  "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  "In this analysis, the claimant is not required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Id. (quoting Smolen, 80 F.3d at 1282).  "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'" Id. (quoting Smolen, 80 F.3d at 1282).  "If the claimant satisfies the first step of

---

[20]Admin. Rec. at 82.

this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'"  Id. at 1014-15 (quoting Smolen, 80 F.3d at 1281).  "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'"  Id. at 1015 (quoting Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)).  "In evaluating the claimant's testimony, the ALJ may use 'ordinary techniques of credibility evaluation.'"  Molina, 674 F.3d at 1112 (quoting Turner v. Comm'r of Social Sec., 613 F.3d 1217, 1224 n.3 (9th Cir. 2010)).  "For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.]"  Id. (internal citations omitted).  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.]"  Id. at 1112-13 (internal citations omitted).  "Even where those activities suggest some difficulty [in] functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  Id. at 1113.

The ALJ considered plaintiff's symptom statements less than credible because plaintiff continued "to work for several months after her alleged disability onset date"; because plaintiff's treatment records indicate that she quit working because she was laid off, not because of her alleged disabling symptoms; because of her daily activities; and because plaintiff was receiving unemployment benefits.[21] Plaintiff argues that none of these reasons were clear and convincing.

The first reason, that plaintiff continued to work, was not a clear and convincing reason because an attempt to work is not necessarily inconsistent with disabling limitations. The Ninth Circuit has stated that "[i]t does not follow from the fact that a claimant tried to work for a short period of time and, because of h[er] impairments, failed, that [s]he did not then experience pain and limitations severe enough to preclude h[er] from maintaining substantial gainful employment." Lingenfelter, 504 F.3d at 1038. Rather, the court has "suggested that similar evidence that a claimant tried to work and failed actually supported h[er] allegations of disabling pain." Id.

As for the second reason, that she reported that she was laid off, plaintiff argues that this was not a clear and convincing reason for finding her symptom statements less than credible because she testified that she "either ... had to quit or they were, they will fire

---

[21]Admin. Rec. at 114. Contrary to plaintiff's contention, the ALJ did not find plaintiff's symptom statements less than credible based on the objective medical evidence. The ALJ simply observed that the objective medical evidence in this case was "limited", which was an accurate observation.

me."[22]  Plaintiff argues that the ALJ ignored this testimony.

The ALJ did not ignore this testimony.  Rather, the ALJ found plaintiff's testimony that she left her last full-time job because of her disabling condition inconsistent with what she told Dr. Bomprezzi, which was that she had been laid off.[23]  An ALJ may consider inconsistencies in a claimant's statements when assessing the claimant's credibility.  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).

Plaintiff argues, however, that even if she did stop working because she was laid off, this is not a sufficient reason to find her symptom statements less than credible.  See Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) (ALJ's credibility findings, which included a finding that the plaintiff "left her last job not because of medical necessity," were insufficient because the ALJ was "required to point to specific facts in the record which demonstrate that Dodrill is in less pain than she claims").

Plaintiff's reliance on Dodrill is misplaced because there was no issue of inconsistent statements in that case.  Here, the ALJ found that plaintiff had made inconsistent statements as to why she left her last full-time job.  This was a clear and convincing reason to find plaintiff's symptom statements less than credible.

The third reason given by the ALJ, that plaintiff engaged in daily activities

---

[22]Admin. Rec. at 79.

[23]Admin. Rec. at 293.

-12-

inconsistent with a claim of disability, was not a convincing reason to find her symptom statements less than credible.  The ALJ noted that plaintiff "is able to vacuum, do laundry, cook and perform other household [chores] although it takes her longer to complete those tasks.  She also reported that she is able to go grocery shopping, go to the mall and attend church...."[24]  But, the ALJ made no finding that plaintiff spent a substantial part of her day engaged in these activities, which is a prerequisite for a negative determination based on a claimant's daily activities.  See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("physical activities did not consume a substantial part of Ms. Vertigan's day. This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability").  And, the ALJ did not make any findings as to how these activities would be transferable to a work environment. Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014).

As for the fourth reason, that she was receiving unemployment compensation, there is no evidence that plaintiff was holding herself out as available for full-time work.   The Ninth Circuit has recognized that "while receipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime," only if the claimant holds herself out as available for full-time work is the receipt of such benefits "inconsistent with ... disability

---

[24]Admin. Rec. at 114.

allegations." <u>Carmickle v. Comm'r, Social Sec. Admin.</u>, 533 F.3d 1155, 1161-62 (9th Cir.

2008).  Defendant is correct that under Arizona law, in order to receive unemployment

insurance, a claimant must hold herself out for full-time work.  <u>See</u> A.A.C. R6-3-52190 ("A

claimant who states that he is able and willing to accept a part-time job but is unable to

accept a full-time job because of a physical disability may be presumed to be unable to

work.").  But because there is no evidence in the record that plaintiff held herself out as

being available for full time work, this credibility finding by the ALJ is not supported by

substantial evidence.  <u>See</u> <u>Jenson v. Colvin</u>, Case No. CV–13–01018–PHX-BSB, 2014 WL

1878449, at *11 (D. Ariz. May 9, 2014) ("ALJ erred in discounting the claimant's subjective

complaints based on his receipt of unemployment benefits when the record did not include

the unemployment benefits application").  In addition, defendant has recognized that "a

person can qualify for Social Security disability even though he or she remains capable of

performing some work"[25] and thus the fact that a claimant is receiving unemployment

benefits is not inconsistent with a claim for Social Security benefits.  And finally, basing an

adverse credibility finding on the receipt of unemployment benefits is contrary to Social

Security regulations, which provide that "[y]ou are not eligible for SSI benefits if you do

not apply for all other benefits for which you may be eligible."  20 C.F.R. § 416.210(a).

The ALJ erred as to three of the four reasons given for finding plaintiff's symptom

---

[25]Brief for Plaintiff at 15, Docket No. 17 (quoting November 15, 2006 Memorandum
from Chief Administrative Law Judge).

statements less than credible.  An error is harmless if "the ALJ's remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence in the record." Carmickle, 533 F.3d at 1162 (emphasis omitted).  "In other words, after the error is removed there must remain specific reasons supporting the credibility finding such that they constitute substantial evidence." Coxey v. Astrue, Case No. CIV S-07-0977 JAM GGH, 2008 WL 4291390, at *3 (E.D. Cal. Sept. 18, 2008).  Here, the one remaining reason is not sufficient.  Whether plaintiff quit or was laid off is an inconsistency but on a matter of no great significance to the ultimate question of whether plaintiff is disabled.  Thus, the ALJ's error as to credibility was harmful.

Because the ALJ erred in finding plaintiff's symptom statements less than credible, the court must decide whether to remand for an award of benefits or for further proceedings.  "Remand for further administrative proceedings is appropriate if enhance-ment of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted).  "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Id.

> More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from

the record that the ALJ would be required to find the claimant
disabled were such evidence credited.

Id. However, the court is required "to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." Garrison, 759 F.3d at 1021.

If plaintiff's testimony is credited as true, she would be disabled. Plaintiff testified she has to lay down 2-4 hours per day some days, not every day but in a "typical" day.[26] Dr. Komar testified that a person "who needs to lay down between two and four hours in a typical eight-hour day" would be unable to do plaintiff's past relevant work or any other work.[27] A remand for benefits is appropriate in this case.

Conclusion

Based on the foregoing, the Commissioner's decision is reversed and this matter is remanded for benefits.

DATED at Anchorage, Alaska, this 13th day of January, 2015.

/s/ H. Russel Holland
United States District Judge

---

[26]Admin. Rec. at 77-78.

[27]Admin. Rec. at 83.